**ROLANDO B. REYES, Defendant-Appellant**

v.

**THE PEOPLE OF THE TERRITORY OF GUAM,**
**Plaintiff-Appellee**

Criminal No. 77-003-A

District Court of Guam

Appellate Division

March 3, 1978

Before DUENAS, SMITH and WONG, *District Judges*

SMITH, *District Judge*

## OPINION

Reyes appeals his conviction of second degree burglary on the ground that his confession was admitted in violation of his fifth amendment rights.

At the hearing on a motion to suppress the confession, it appeared that Reyes was taken by police officers to the police station. There the *Miranda* warnings were given in English. Following defendant's signing of a waiver-of-rights form, defendant was interrogated, and he then confessed. Defendant's first language is Tagalog, and it is now claimed that the confession was not voluntary because defendant did not comprehend the warnings given to him in English. At the suppression hearing a school psychologist who had examined defendant testified that his verbal IQ was 64—just above mental retardation; that his reading comprehension was between first and second grade levels; and that he could not possibly comprehend the *Miranda* rights form in the English language. The detectives who questioned defendant testified that the defendant said that he understood English and that they believed he understood. A fact question as to whether defendant knowingly

waived his rights was presented to the judge, and it is not clear that the judge ever resolved the question.[1]

[1] The colloquy between court and counsel was as follows:

THE COURT: Thank you. As to the three points, I think that the arrest took place at the Reyes home. He was taken into custody at that time. At that time, the Public Safety had probably cause to arrest him. I find that the statement he made was voluntary. The record is absolutely devoid of any coercion, inducement, stratagem; anything of that nature. Thirdly, on *Miranda*, the testimony is uncontradicted that this was a voluntary statement. This is not—this statement, according to the testimony, was not the fruit of interrogation.

MR. COST: Your Honor, I would—

THE COURT: Therefore, the motion is denied. I have an opinion on the reading and the understanding of the *Miranda* rights and whether they were intelligently waived or not. In view of the fact that I find that the statement was voluntarily given, and not the fruit of interrogation, it's not necessary for me to reach that point.

MR. KERLEY: Your Honor, I would ask of your holding, then, that the rights were voluntarily knowing—and knowingly waived?

THE COURT: No. I'm not—I don't have to reach it. If you want me to reach it, I will.

MR. KERLEY: (Nods.)

THE COURT: Because it's a—it's a—it not being the fruit of interrogation—

MR. KERLEY: Are you—you are ruling, then, that there was no interrogation.

THE COURT: That's correct. No, I'm not saying that. I'm saying that his statement that the Government intends to produce there—the testimony was without contradiction that it was not the fruit of questioning by the police.

MR. KERLEY: May I ask further if the Court is ruling that, uh, the fact situation we have before us, that *Miranda* warnings were not required?

THE COURT: I don't have to rule on that. So that, basically, the motion is denied.

MR. KERLEY: But, your Honor, I would like to get a just—I want to understand, in my own mind, what your ruling is.

THE COURT: I covered the three points.

MR. KERLEY: But what I—what I don't understand is whether you think *Miranda* is necessary. The giving of *Miranda* warnings in this fact situation was necessary?

THE COURT: (No response.)

MR. KERLEY: Have you reached a ruling on that?

THE COURT: I don't think it's necessary for me to reach it. That's what I'm saying.

MR. KERLEY: If it were necessary, do you feel that the Defendant knowingly and intelligently waived those rights?

THE COURT: I do. And that's without any disparagement of the qualified expert at all; at all.

MR. KERLEY: Your Honor, can I inquire as to results of, uh—procedurally, the results of your ruling?

THE COURT: The motion is denied, and he can—he can then introduce the statement. You can, of course, through any means that you wish, place the issue of voluntariness before the jury.

*Jackson v. Denno*, 378 U.S. 368 (1964), establishes a rule that a defendant in a criminal case has a 14th amendment right to have the voluntariness of his confession determined by the court, and *Sims v. Georgia*, 385 U.S. 538, 544 (1967), establishes the proposition that "[a]lthough the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity."

■ We are unable to determine that the judge here made such a finding. He was clearly mistaken in saying that the confession was not the result of interrogation, and apparently the conclusion that the confession was voluntary was based on that mistaken premise rather than on a determination that the defendant fully understood the warnings given. In any event, it does not appear with unmistakable clarity that the trial court ever passed upon defendant's understanding of the *Miranda* warnings given to him in English. For that reason, the judgment is reversed, and the case is remanded for a new trial.

■ On a new trial, the contention made by the defendant that his confession was the fruit of the poisoned tree may be important, and for that reason we rule upon it. It is urged that defendant's arrest was based solely on information received from an unidentified informer[2] who was not known to be reliable, and that, hence, the confession was the product of an unlawful arrest and is inadmissible. See *Wong Sun v. United States*, 371 U.S. 471 (1963). In this case, the officers knew that the tires had been stolen; they knew that the informer had pointed to defendant and one Marquez. Marquez, on being arrested, confessed, and in his confession implicated defendant. Marquez' confession verified the statements of the informer, at least to the extent that it showed the informer to be correct about

---

[2] *Aguilar v. Texas*, 378 U.S. 108 (1964).

Marquez, and constituted another source pointing to defendant. Under these circumstances, we believe that there was probable cause to arrest defendant and that his confession was not the product of an unlawful arrest unless it can be said that the information given by Marquez could not be used because Marquez was unlawfully arrested and his statements were the fruit of the poisoned tree and not usable against defendant.

We assume that the arrest of Marquez was unlawful and that his confession, as against him, was inadmissible. *Wong Sun v. United States*, 371 U.S. 471 (1963). Plaintiff, however, has no standing to assert the illegality of the Marquez arrest. In *Wong Sun v. United States*, the officers illegally arrested one Toy. His statements secured as the result of the illegal arrest were inadmissible against him, as was some heroin found as a result of Toy's statements. However, the heroin was admissible as to Wong Sun. The Court said at 492 "[t]he seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial." The fact that the heroin was the fruit of the poisoned tree as to Toy did not preclude its use as to Wong Sun. In *Wong Sun*, the Court applied to a case involving an illegal arrest the normal rule that only one whose rights have been violated has standing to complain. See *Stone v. Powell*, 428 U.S. 465, 488 (1976) (stating the rule that standing to invoke the exclusionary rule exists only when the Government attempts to use illegally obtained evidence to incriminate the victim of the illegal search); *Alderman v. United States*, 394 U.S. 165 (1969) (holding that suppression of evidence derived from illegal electronic surveillance can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved by the introduction of damaging evidence); *Goldstein v. United States*, 316 U.S. 114 (1942) (holding that one who was not a party to messages

intercepted in violation of § 605 of the Federal Communications Act, 47 U.S.C. § 605, has no standing to object to the introduction of the messages into evidence).

The cause is reversed and remanded for further proceedings not inconsistent herewith.